**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

WAYNE ROGERS,                              :
     Plaintiff,                              :
                                            :
v.                                          :          Case No. 3:23-CV-1350 (OAW)
                                            :
RACHAEL FONTAINE, et al.,                   :
     Defendants.                            :

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

     Self-represented plaintiff, Wayne Rogers, a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC") at MacDougall-Walker Correctional Institution ("MacDougall"), brings this complaint under 42 U.S.C. § 1983.  He asserts constitutional claims against four DOC employees in their individual and official capacities:  Rachel Fontaine, Dr. Santiago, Chaplain Usman, and Chaplain Torres. *See* Compl., ECF No. 1.

     The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.   28 U.S.C. § 1915A(a).   Upon review, the court must dismiss the complaint, in whole or in part, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).


## I.    FACTUAL BACKGROUND

     While the court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations to give context to its rulings below:

Plaintiff alleges that he was housed at Corrigan-Radgowski Correctional Center ("Corrigan") at all times relevant to this action.    *See* Compl. 2, ECF No.1

Defendant Fontaine is a DOC employee who distributes and sorts mail at Corrigan; Defendant Dr. Santiago is the DOC Director of Religious Services; Defendant Torres is an Associate Chaplain who works at Corrigan on Thursdays; and Defendant Usaman is an Associate Chaplain who works at DOC's central office.    *See id.* at 2–3.

Plaintiff is designated as an inmate of the Wiccan religion.    *Id.* at 4.    He has requested Wiccan materials from prison chaplains since September 2021, when he became incarcerated.    *Id.*    He requested Chaplain Torres and Dr. Santiago to "print or 'get' anything on Wicca" and informed them of a company from which they may procure Wiccan materials free of charge to prisons for Wiccan inmates.    *Id.*    Despite this, Torres and Santiago not only have denied Plaintiff's requests for materials, but also have not responded to a request for a time and place for him to perform his Wiccan Ritual Circle. *Id.*    By contrast, Defendants Torres and Santiago previously have provided Catholic and Muslim materials upon Plaintiff's request.    *Id.*

Defendant Torres granted Plaintiff permission to order Tarot Cards for his religious practice.    *Id.* at 5.    However, when the Tarot Cards arrived, Defendant Fontaine denied Plaintiff access to them.    *See id.*    Prior to that, she also denied him certain Wiccan books that previously had been approved.    *See id.*    When Plaintiff further investigated the issue, he was told that DOC had approved the Tarot Cards, but that Defendants Torres and Santiago had denied his request, without providing a reason why.    *See id.*

Plaintiff claims that followers of the Wiccan religion are not provided with the same resources—such as materials, space, meals and Chaplains, Imams, or Elders—that are

provided to followers of other religions.    *See id.* at 5–6.    He further asserts that funds for Wicca are being allocated to other religions.    *See id.*

## II.    <u>LEGAL STANDARD</u>

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law."  *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).    "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The court construes Plaintiff's allegations to assert religious deprivations in violation of his First Amendment rights under the Free Exercise and Establishment Clauses, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),[1] 42 U.S.C. § 2000cc-1, and the Fourteenth Amendment Equal Protection Clause. *See Peters v. Ulster Cnty. Sheriff's Dep't/Emps.*, No. 23-210, 2023 WL 4873315, at *1 (2d Cir. July 27, 2023) (noting "district court did not consider whether Appellant asserted other causes of action, including, but not limited to, an Establishment Clause claim, an equal protection claim, and other free exercise claims, in addition to the free exercise

---

[1] Plaintiff cannot proceed against state officials under the Religious Reformation Act ("RFRA"), 42 U.S.C. § 2000bb-1(a), because RFRA cannot be enforced upon state officials.    *See generally City of Boerne v. Flores*, 521 U.S. 507 (1997).

claim it recognized").   The court also considers whether Plaintiff plausibly has alleged a First Amendment violation based on interference with his right to the free flow of mail.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). This is also true for supervisory officials.   *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To . . . hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

## III.  DISCUSSION

### A.  Chaplain Usman

Plaintiff's complaint does not allege any facts describing conduct by Chaplain Usman.   Absent facts about Chaplain Usman's involvement in any violation of Plaintiff's constitutional or federal rights, Plaintiff has not alleged plausible Section 1983 claims against Chaplain Usman in his individual capacity.

### B.  First Amendment Free Exercise

Inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."   *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).   But within the context of incarceration, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."   *Id.* at 349 (citations omitted).   Thus, for a prisoner's claim of First

4

Amendment free exercise deprivation, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)). So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987).

The United States Court of Appeals for the Second Circuit has confirmed that a defendant's "isolated acts of negligence" do not violate an individual's free exercise of religion. *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023) (citing *Daniel v. Williams*, 474 U.S. 327, 330 (1986)). Therefore, a plaintiff must adduce evidence sufficient to raise an inference that a defendant acted with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice. *See id.* at 997–98; *see also Kravitz*, 87 F.4th at 122 (citing *Wiggins,* 86 F.4th at 1001).

Plaintiff's allegations about his consistent deprivation of Wiccan materials and difficulty in practicing his religious rituals suggest that his religious rights are being impinged upon absent legitimate penological reason. Thus, for purpose of this initial review, Plaintiff's allegations raise sufficiently cognizable claims pursuant to the Free Exercise Claus of the First Amendment. The court will permit Plaintiff to proceed on his First Amendment free exercise claims for damages against Dr. Santiago, Chaplain Torres, and Defendant Fontaine, each of whom is plausibly involved in the asserted religious deprivations.

### C.    RLUIPA

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."   *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief, albeit moot in the instant case, but not for money damages claims against state officers in their individual or official capacities).

Plaintiff's complaint sufficiently suggests that Dr. Santiago, Chaplain Torres, and Defendant Fontaine "substantially burden[ed]" Plaintiff's sincerely held religious beliefs. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009); *see Antrobus v. New York City*, No. 23-CV-7038(LTS), 2023 WL 6609443, at *2 (S.D.N.Y. Oct. 10, 2023) (ruling that under RLUIPA, the government may not substantially burden an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means).   Accordingly, Plaintiff may proceed on a RLUIPA claim against Defendants Santiago, Torres, and Fontaine in their official capacities.

### D.    Establishment Clause

"[T]he Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so."   *Lee v. Weisman,* 505 U.S. 577, 587 (1992) (citation, alteration and quotation marks omitted).   Thus, "the government must neither

encourage nor discourage religion and must maintain neutrality." *Richard v. Strom*, No. 3:18-cv-1451(CSH), 2018 WL 6050898, at *4 (D. Conn. Nov. 19, 2018).

Accepting Plaintiff's allegations as true, the facts suggest that Defendants Santiago, Torres, and Fontaine acted to discourage Plaintiff's practice of Wiccan religion. Accordingly, the court will permit Plaintiff to proceed on his claim for damages based on First Amendment Establishment Clause violations against Santiago, Torres, and Fontaine in their individual capacities for further development of the record.

### E.    Fourteenth Amendment Equal Protection Violation

Plaintiff's allegations suggest a violation of Equal Protection Clause of the Fourteenth Amendment.

To state an equal protection claim, a plaintiff must allege facts showing that: "(1) [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

For purpose of initial review, Plaintiff's allegations are sufficient to raise an inference that he is facing discrimination based on his Wiccan religious beliefs.

A plaintiff also may bring a "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted).    To succeed on a "class of one claim," "[t]he plaintiff must demonstrate the existence of a person who is '*prima facie*

7

identical' to him and who was treated differently." *Conquistador v. Corcella*, No.3:22-cv-992(JAM), 2023 WL 3006806, at *2 (D. Conn. Apr. 19, 2023) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)).   Plaintiff has not, however, alleged facts to raise an inference that he is being treated differently from any such comparators without a rational reason.

In sum, Plaintiff may proceed on his Fourteenth Amendment Equal Protection Clause claims.   The court finds that Plaintiff has raised a cognizable claim based on allegations that he is subject to discriminatory animus based on his Wicca religion.   This claim may proceed against Defendants Santiago, Torres, and Fontaine in their individual and official capacities, for further development of the record.

### F.    Free Flow of Mail

A prisoner's right to "free flow of incoming and outgoing mail" is protected by the First Amendment.   *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).   "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation . . . and must be no greater than is necessary or essential to the protection of the governmental interest involved."   *Id.* (alterations in original) (citation omitted).

In general, a single incident is insufficient to establish a constitutional violation. *See Steve v. Arnone*, 627 F. App'x 50, 50 (2d Cir. 2016) (affirming dismissal of claim based on only one incident of interference with legal mail).   However, "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the

courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).   Typically, a plaintiff must allege "specific allegations of invidious intent or of actual harm where the incidents of [mail] tampering are few and thus the implication of an actionable violation is not obvious on its face."   *Id.; see Riley v. Semple*, No. 3:17-CV-45(VAB), 2017 WL 507214, at *3 (D. Conn. Feb. 7, 2017) (applying the *Davis* standard of determining whether there was an actionable violation of the First Amendment).

At this stage of initial review, the court will permit Plaintiff to proceed on First Amendment claims based on mail restrictions against Defendants Santiago, Torres, and Fontaine in their individual capacities for further development of the record.

### G.    Official Capacity Claims

Plaintiff has sued Defendants in their official capacities.

Plaintiff may seek relief against a state official in their official capacity only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief.   *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

Here, Plaintiff plausibly alleges not only that he is subject to continuing religious deprivations in violation of his First and Fourteenth Amendment rights, but also that Defendants could afford him relief in their official capacities.   Accordingly, the court will permit Plaintiff to proceed on his claims against Defendants Santiago and Usman.   *See Scozzari v. Santiago*, No. 3:19-cv-00229(JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (a claim for injunctive relief may only proceed against a defendant only to the

extent that a defendant has the power to remedy the alleged on-going constitutional violation); *see also Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act); *Loren v. Levy*, No. 00 Civ. 7687(DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("[A]ctions involving claims for prospective . . . injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." (citations omitted)).

Plaintiff's requests for any official relief against Defendants Fontaine and Torres, each of whom allegedly works at Corrigan, are moot now that Plaintiff is housed at MacDougall.   *See Washington v. McKoy*, 816 F. App'x 570, 572–73 (2d Cir. 2020) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

In addition, any request for monetary relief from Defendants in their official capacity under Section 1983 is barred by the Eleventh Amendment.   *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (ruling that the Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Congress did not intend for Section 1983 to override "traditional sovereign immunity of the States" protected by the Eleventh Amendment).

IV.   <u>ORDERS</u>

For the foregoing reasons, Plaintiff may proceed on individual capacity claims for: (1) First Amendment Free Exercise Clause and Establishment Clause violations against

Defendant Santiago, Chaplain Torres, and Defendant Fontaine; (2) a Fourteenth Amendment Equal Protection Clause violation against Defendants Santiago, Torres, and Fontaine; and (3) a First Amendment violation due to mail interference against Defendants Santiago, Torres, and Fontaine. (4) He also may proceed on his official capacity claims for ongoing First Amendment Free Exercise Clause and Establishment Clause violations, and for a Fourteenth Amendment Equal Protection Clause violation against Defendants Santiago and Usman.

If Plaintiff wishes to correct the deficiencies of his claims as identified by this Order, he may file an amended complaint within **thirty (30) days** of this Order's filing date. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated by reference into his amended complaint.

Additionally, the court orders the following orders.

1) The Clerk shall verify the current work addresses for Dr. Santiago, Chaplain Torres, and Rachel Fontaine with the DOC Office of Legal Affairs, mail to them at their confirmed addresses within **twenty-one (21) days** of this Order a waiver of service of process request packet containing the complaint and any attachments, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.   If a defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on such defendant in their individual capacity, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

2) Within **twenty-one (21) days** of this Order, the Clerk shall prepare a summons

form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this Order on Dr. Santiago and Chaplain Usman in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

3) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

4) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants also may include any and all additional defenses permitted by the Federal Rules.

5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order.   Discovery requests need not be filed with the court.

6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders [https://perma.cc/2PJM-V9NN].

7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the court.   Failure to do so can result in the dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

10) Plaintiff shall utilize the Prisoner Electronic Filing Program ("The Program") when filing documents with the court.   Plaintiff is advised that the Program may be used only to file documents with the court.   As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.


**IT IS SO ORDERED** at Hartford, Connecticut, this 8th day of January, 2024.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE